UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Anthony Harp,

    Plaintiff,

v.

Kristine Austin *et al.*,

    Defendants.

Case No. 21-12446
District Judge Nancy G. Edmunds
Magistrate Judge Jonathan J.C. Grey

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Anthony Harp brings this complaint under 42 U.S.C. § 1983 against Kristine Austin, Sirena Landfair, JCF Healthcare Staff (Jane/John Does #1–#5), Michigan Department of Corrections (MDOC), Corizon Health Inc., and Brian Strickland for violation of his Eighth Amendment rights. (ECF No. 1.) This matter is before the Court on Landfair's motion for summary judgment on the basis of exhaustion. (ECF No. 23.) Harp did not respond to Landfair's motion.

For the following reasons, the undersigned **RECOMMENDS** that Landfair's motion for summary judgment (ECF No. 23) be **GRANTED**.

1

I. **Background**

**A. Procedural History**

On October 8, 2021, Harp filed his complaint against all defendants. (ECF No. 1.) Following reports and recommendations from this Court (ECF Nos. 17, 21), Judge Nancy G. Edmunds dismissed defendants Strickland, MDOC, and JCF Healthcare Staff from this case. (ECF Nos. 20, 24.) Austin, Landfair, and Corizon Health Inc. remain as defendants.

On March 2, 2022, Landfair moved for summary judgment on the basis of exhaustion. (ECF No. 23.)

**B. Relevant Facts**

Harp is an incarcerated person with a history of degenerative eye diseases. (ECF No. 1, PageID.16.) Due to a medical need, Harp underwent a left-eye cornea transplant. (*Id.*) After complications from the surgery, Harp lost his left eye. (*Id.*) Now, Harp only sees with his right eye. (*Id.*)

Harp claims that he developed a serious infection in his right eye around January 2021 from an unclean contact lens. (*Id.* at PageID.16–18.) Harp alleges that he sought assistance from Austin (nurse practitioner), Landfair (health unit manager), and unidentified JCF healthcare staff many times through conversations

2

and kites.[1] (*Id.* at PageID.16.) Harp claims that, despite asking, he: 1) never received disinfectants like saline solution and "Boston multipurpose cleaning solution" and 2) did not see an eye specialist until July 2021. (*Id.* at PageID.17–19.) Harp attributes the denial and delay to deliberate indifference by all defendants. (*Id.* at PageID.17.) Regarding Landfair, Harp alleges that she "ignored and dismissed [his] concerns and complaints of inhumane treatment over and over again." (*Id.* at PageID.7, 23–24.)

### C. MDOC Grievance Process

MDOC provides a three-step grievance process that prisoners must follow to exhaust administrative remedies. MDOC Policy Directive 03.02.130 (effective Mar. 18, 2019). Per MDOC policy, grievants must include the "[d]ates, times, places, and names of all those involved in the issue being grieved." *Id.* ¶ S. Prior to Step I, a grievant must "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue." *Id.* ¶ Q. If there is no resolution, the grievant may file a Step I grievance within five business days. *Id.* At Step II, a grievant may appeal the denial of a Step I grievance within ten business days after receipt of the Step I response. *Id.* ¶ DD. At Step III, a grievant may appeal the Step II denial within ten business days after receipt of the

---

[1] A "kite" is an internal mailing that prisoners can send to prison officials, generally used to express complaints. *McCracken v. Haas*, 324 F. Supp. 3d 939, 943 n.1 (E.D. Mich. 2018).

3

Step II response. *Id.* ¶ HH. Grievances at all steps are logged in a computerized tracking system. MDOC Policy Directive. *Id.* ¶¶ X, EE, II.

## II. Standard of Review

### A. Summary Judgment

Under Federal Rule of Civil Procedure 56(a), courts must grant motions for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Moreover, a fact is material "only if its resolution will affect the outcome of the lawsuit." *Id.* at 451–52 (citing *Anderson*, 477 U.S. at 248).

In reviewing a summary judgment motion, the Court must draw all justifiable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). The burden of demonstrating the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party bears this responsibility by identifying portions of the record that show the absence of a genuine issue as to any material fact. *Id.* If

the moving party meets its burden, the burden then shifts to the nonmoving party to establish "specific facts showing that there is a genuine issue for trial." *Id.* at 324. If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," the moving party is then entitled to summary judgment. *Id.* at 322.

### B. Exhaustion

The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust all available administrative remedies before filing an action about prison conditions. 42 U.S.C. § 1997e(a). The Supreme Court requires that a grievant exhaust all administrative remedies before filing a lawsuit. *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). It is also "the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218. Proper exhaustion entails "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (emphasis in original) (citation and internal quotations omitted).

Failure to exhaust is an affirmative defense, so prisoners are "not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. The burden thus rests on defendants to establish failure to exhaust. *Napier v.*

5

*Laurel Cty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011). Once the defense of failure to exhaust is raised, the grievant must "present 'significant probative evidence' to defeat the motion for summary judgment." *Id.*

Here, Harp was required to undertake all steps of the MDOC process to fully exhaust his grievances. *Woodford*, 548 U.S. at 90. Landfair, who bears the burden of proof, provided Harp's Step III grievance report. (ECF No. 23-3.) According to the report, prior to filing his lawsuit, Harp pursued multiple grievances through Step III. The only grievance in question, Grievance No. JCF-21-03-0534-12Z, did not name Landfair. (*Id.* at PageID.149–151, 141.)

### III. Analysis

Harp failed to exhaust his administrative remedies against Landfair because he did not name Landfair in his Step I grievance. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (stating that there is no exhaustion where an inmate fails to name individuals in his Step I grievance); MDOC Policy Directive 03.02.130 ¶ S.

On March 18, 2021, Harp submitted a Step I grievance. (ECF No. 1, PageID.22; ECF No. 23-3, PageID.151.) In this grievance, Harp alleged he had not received necessary medical treatment or supplies for his eye. (ECF No. 23-3, PageID.151.) Harp named "Brian Stricklin (*sic*) (RN)," "'NP' Austin," "B-Unit

6

Officer," "M.D.O.C," "Corizon Health," and "JCF Healthcare Staff (Jane/John Does)." (*Id.*) Notably, Harp did not name Landfair. (*Id.*)

At Step I, MDOC denied Harp's grievance, explaining that Harp was actively receiving treatment for his eye. (*Id.* at PageID.152.) According to their investigation, MDOC healthcare staff saw Harp on March 18 and 19, 2021. (*Id.*) On March 19, 2021, Harp's medical provider sent him offsite to the Kellogg Eye Center for further care. (*Id.*) Harp returned from the offsite location four days later. (*Id.*)

In his Step II grievance, Harp denied visiting Kellogg Eye Center. (*Id.* at PageID.149.) Harp alleged that, while offsite, a doctor at an unspecified location looked at his eye briefly and never followed up with him. (*Id.*) Harp mentioned Austin, "JCF Healthcare Staff," and the offsite doctor. (*Id.*) He did not list Landfair. (*Id.*)

In their Step II denial, MDOC concluded that they addressed Harp's optometry needs as he allowed. (*Id.* at PageID.150.) Following an investigation, MDOC found that Harp: 1) did not visit Kellogg Eye Center because he declined the appointment; 2) denied subsequent offsite eye appointments because of the transportation officers; 3) twice visited an onsite medical provider; and 4) received prescription eye drops. (*Id.*)

7

In his Step III grievance, Harp claimed that "JCF Healthcare Staff" and Austin assured him that they would reschedule his offsite appointment if he provided a reason for refusing the first appointment at Kellogg Eye Center. (*Id.* at PageID.149.) Harp alleges that he was pursuing civil action against his transportation officers, and refused the appointment for fear of harassment and retaliation from them. (*Id.*) Harp alleges that he explained his refusal but did not receive a new appointment. (*Id.*) Again, Harp did not mention Landfair. (*Id.*)

In their Step III denial, MDOC affirmed their Step I and Step II responses. (*Id.* at PageID.148.) MDOC concluded that Harp's claims could not be substantiated and that it was appropriately addressing his medical claims. (*Id.*)

### A. Harp did not Name Landfair During the Grievance Process

Harp did not name Landfair at any step in the grievance process. (ECF No. 23-3, PageID.149–151.) Harp solely named "Brian Stricklin (*sic*)," "'NP' Austin," "B-unit officer," "M.D.O.C," "Corizon Health," and "JCF Healthcare Staff (Jane/John Does)." (*Id.*)

The MDOC grievance process requires a grievant to include the names of all those involved in the issue they are grieving. MDOC Policy Directive 03.02.130 (effective Mar. 18, 2019) ¶ S. Failure to do so at Step I generally constitutes a failure to properly exhaust administrative remedies. *Reed-Bey*, 603 F.3d at 324; *see also Burley v. Michigan Dep't of Corr.*, No. 16-CV-10712, 2016 WL 11259277, at

8

*7 (E.D. Mich. Nov. 30, 2016), report and recommendation adopted, No. 16-CV-10712, 2017 WL 877219 (E.D. Mich. Mar. 6, 2017) ("By naming [the defendant] at only step II of the grievance process, and failing to name [the defendant] at step I, [the plaintiff] has failed to properly exhaust this claim against [the defendant.]"). The Sixth Circuit recognizes an exception to this general rule. If MDOC grievance screeners overlook or forgive a procedural defect and address a grievance on the merits, they "cannot be heard to complain about that defect in later litigation." *Johannes v. Washington*, 2016 WL 1253266 at *10 (E.D. Mich. 2016) (citation omitted); *see also Reed-Bey*, 603 F.3d at 323 ("Because the Michigan Department of Corrections opted to dismiss his grievance on the merits rather than invoke its procedural bar, Reed-Bey exhausted his claim.").

On similar facts, the Sixth Circuit granted a motion for summary judgment based on exhaustion. In *Brown v. McCullick,* Brown, an incarcerated person, filed suit against several defendants, including four individual defendants. 2019 WL 5436159 at *2 (6th Cir. 2019). Brown pursued a grievance through Step III but did not name the four individual defendants in his Step I grievance. *Id.* Instead, at Step I, Brown named two other prison officials whom he did not later sue. *Id.* at *1. The four defendants moved for summary judgment, arguing that Brown did not exhaust claims against them because Brown failed to name them in his Step I grievance. *Id.* at *2. The Sixth Circuit agreed. *Id.* at *3. The Court declined to extend *Reed-Bey*

9

because Brown listed two people in his Step I grievance, whereas Reed-Bey listed no one in his Step I grievance. *Id.* The court reasoned that "prison officials would naturally assume that Brown complied with the requirement to name those involved, and defendants cannot be said to have waived the exhaustion defense when they had no way of knowing that they would be subject of a later lawsuit." *Id.*

Harp named many people and entities at Step I. (ECF No. 23-3, PageID.151.) Harp did not name Landfair at Step I. (*Id.*) Like the prison officials in *Brown*, grievance screeners may have reasonably thought that Harp named every individual involved in Harp's claims such that MDOC could process the grievance on the merits. *Brown*, 2019 WL 5436159 at *3; *Johannes*, 2016 WL 1253266 at *11. Harp's failure to name Landfair at Step I prevented prison officials from knowing or addressing Landfair's alleged role in Harp's requests for medical treatment and supplies. *See Brown*, 2019 WL 5436159 at *3. Landfair could not have known that she was allegedly involved in Harp's grievance. *See Id.*

Since Harp failed to name Landfair at Step I of the grievance process, he did not adhere to MDOC grievance process requirements. MDOC Policy Directive 03.02.130 ¶ S.

### B. Generic References do Not Satisfy the Naming Requirement

In Step I, Harp named "M.D.O.C" and "JCF Healthcare Staff (Jane/John Does)." (ECF No. 23-3, PageID.151.) Such generic labels are insufficient to constitute exhaustion against Landfair. *Boles v. Aramark Corr. Services, LLC*, 2018 WL 3854143 at *2 (6th Cir. 2018) (holding that generic references to defendants in a grievance did not satisfy exhaustion because they failed to describe the defendants' involvement and provide notice of the allegations.).

Harp's use of broad terms like "MDOC" and "JCF Healthcare Staff" means that he failed to exhaust his claims against Landfair. *Id.* Harp did not describe Landfair's alleged role in mistreatment and did not provide Landfair with any notice of his allegations. (ECF No. 23-3, PageID.149,151.) Additionally, Harp named MDOC and JCF Healthcare Staff separate from Landfair in his complaint. (ECF No. 1.) Harp voluntarily dismissed JCF Healthcare Staff (ECF No. 19, 24), and Judge Edmunds dismissed MDOC. (ECF No. 20.) Therefore, Harp's general references to organizational entities do not satisfy MDOC's exhaustion requirements. *Boles*, 2018 WL 3854143 at *2; MDOC Policy Directive 03.02.130 ¶ S.

Since none of Harp's grievances named Landfair, Harp did not comply with MDOC policy. MDOC Policy Directive 03.02.130 ¶ S. His grievances thus cannot satisfy the PLRA's exhaustion requirement. *Woodford*, 548 U.S. at 90 ("Proper

11

exhaustion demands compliance with an agency's deadlines and other critical procedural rules.") Harp cannot maintain his claims against Landfair.

## IV. Conclusion

For the foregoing reasons, the undersigned **RECOMMENDS** that Landfair's motion for summary judgment (ECF No. 23) be **GRANTED**.

Dated: July 19, 2022               s/**Jonathan J.C. Grey**
                                   Jonathan J.C. Grey
                                   United States Magistrate Judge

## Notice to the Parties About Objections

Within 14 days of being served with a copy of this Report and Recommendation, any party may object to and seek review of the proposed findings and recommendations set forth above. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). If a party fails to timely file specific objections, any further right of appeal is waived. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Only specific objections to this Report and Recommendation are preserved for appeal; all other objections are waived. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). Each objection must be labeled as "Objection No. 1," "Objection No. 2," etc. Each objection must specify precisely the provision of this Report and Recommendation to which it pertains. In accordance with Local Rule 72.1(d), copies of objections must be served on this Magistrate Judge.

A party may respond to another party's objections within 14 days after service of any objections. Fed. R. Civ. P. 72(b)(2). Any such response should be concise and address each issue raised in the objections in the same order and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 19, 2022.

s/ **S. Osorio**
Sandra Osorio
Case Manager
