UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY HARP,

      Plaintiff,

v.

KRISTINE AUSTIN and CORIZON
HEALTH INC.,

      Defendants.

_____/

Case No. 2:21-cv-12446
District Judge Nancy G. Edmunds
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION
## TO GRANT IN PART AND DENY IN PART
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 31)[1]

I.      Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983, Title II of the

Americans with Disabilities Act (ADA), and the Rehabilitation Act. Plaintiff

Anthony Harp (Harp), proceeding *pro se*, filed a complaint against six defendants,

the Michigan Department of Corrections (MDOC), Corizon Health Inc. (Corizon),

JCF Healthcare Staff, Kristine Austin (Austin), Sirena Landfair (Landfair), and

Brian Strickland (Strickland). During the relevant period, Landfair and Strickland

---

[1] Upon review of the parties' papers, the undersigned deemed this matter
appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D.
Mich. LR 7.1(f)(1).

1

were employed by the MDOC while Austin was employed by Corizon.

In broad terms, Harp alleges that the individual defendants were all deliberately indifferent to an eye infection he developed in his right eye leading him to suffer pain and vision loss. *See* ECF No. 1. Under 28 U.S.C. § 636(b)(1), all pretrial matters were referred to the undersigned. (ECF No. 33). Following motion practice, the only remaining defendants are Corizon and Austin.

Before the Court is Austin and Corizon's joint motion for summary judgment. (ECF No. 31). Harp filed a response. (ECF No. 39). For the reasons set forth below, it is RECOMMENDED that the motion be GRANTED IN PART and DENIED IN PART as to Austin and DENIED WITHOUT PREJUDICE as to Corizon. If this recommendation is adopted, the case will continue against Corizon due to the bankruptcy stay and against Austin on Harp's § 1983 claim alleging deliberate indifference in violation of the Eighth Amendment.

## II.    Background

### A.    Complaint

The following facts are gleaned from Harp's verified complaint. Only the facts relevant to resolving Austin's motion for summary judgment are included.

Harp is incarcerated at G. Robert Cotton Correctional Facility (JCF). (ECF No. 1, PageID.6). He has "a history of [keratoconus], congenital nystagmus,

severe corneal/scarring, and cataracts."[2]  (*Id*., PageID.16).  Additionally, Harp

previously underwent a cornea transplant in his left eye.  (*Id*.).  His body rejected

the transplant, leading to the loss of his left eye.  (*Id*.).  During the relevant period,

Harp only had one eye.  (*Id*.).

In or around January 2021, Harp "developed a severe infection in [his] right

eye."  (*Id*.).  Harp attempted to contact MDOC and Corizon medical providers

regarding this issue, including Austin who is a nurse practitioner.  (*Id*.).  Harp's

contact efforts involved speaking to medical providers in person and

telephonically, sending them kites,[3] and filing a grievance.  (*Id*., PageID.16-17, 20-

---

[2] These are all medical issues related to Harp's eyes.  "Keratoconus (ker-uh-toe-KOH-nus) is an eye condition in which your cornea — the clear, dome-shaped front of your eye — gets thinner and gradually bulges outward into a cone shape. A cone-shaped cornea causes blurred vision and may cause sensitivity to light and glare."  https://www.mayoclinic.org/diseases-conditions/keratoconus/symptoms-causes/syc-20351352 (last accessed July 7, 2023).  Congenital nystagmus is a condition that individuals are born with and "[t]he main symptom is blurry vision." https://my.clevelandclinic.org/health/diseases/22064-nystagmus (last accessed July 7, 2023).  Corneal scaring can impair an individual's vision and "can be caused by improper use of contact lenses, deep scratches, lacerations, burns, and some diseases like shingles and syphilis." https://www.medstarhealth.org/services/corneal-scarring (last accessed July 7, 2023).  "A cataract is a clouding of the normally clear lens of the eye." https://www.mayoclinic.org/diseases-conditions/cataracts/symptoms-causes/syc-20353790 (last accessed July 7, 2023).

[3] A "kite" is a form that allows inmates to communicate and get information about "just about anything," including court dates, visitors, lawyers' information, requests, complaints, or medical assistance.  *See, e.g.*, *Meirs v. Ottawa Cnty.*, 821 F. App'x 445, 448 (6th Cir. 2020).

3

23).  Notably, in or around early March 2021, Harp "spoke directly with . . . Austin about [his] 'ongoing' infection in [his] eye, [his] need for supplies (saline solution, Boston multi-purpose cleaning solution), 'ongoing' pain related to [his] eye infection, and multiple other chronic health issues."  (*Id.*, PageID.24).  When Harp wrote his complaint in August 2021, he still had "not received necessary medical treatment."  (*Id.*, PageID.17).

Specifically, Harp says that he was not provided with "management supplies" for his eye conditions, "such as 'saline solution' and 'Boston multipurpose cleaning solution' – which disinfects, cleans, and cushions [his] contact lense [sic] for [his] right eye."  (*Id.*).  Harp's right "eye was irritated and became infected as a direct result[,]" of not receiving the requested supplies when he asked for them.  (*Id.*).  Additionally, without the requested supplies, Harp was "at risk of having [his] contact lense [sic] become permanently 'fused' or attached to [his] cornea, because [he has] been forced to leave [his] 'contact' in [his] eye for prolonged periods of time, causing [his] cornea to become 'detached' with [his] eye when [he does] try and take the 'contact' lense [sic] out of [his] eye to clean and disinfect it."  (*Id.*, PageID.18).

On March 19, 2021, Harp was taken to the emergency room at Henry Ford Allegiance Hospital (Henry Ford) in Jackson, Michigan.  (*Id.*).  After a brief examination of his right eye, the examining doctor recommended that Harp be

4

transported to the University of Michigan Hospital (U of M) in Ann Arbor, Michigan.  (*Id*.).  However, Harp was not seen by an optometrist at U of M until July 23, 2021.  (*Id*.).  On that date, an optometrist examined Harp's eye, but "[n]o further treatment was provided at that time."  (*Id*., PageID.18-19).

In total, Harp suffered "considerable pain in [his] right eye" during the six-month delay between the onset of his symptoms and being examined by an optometrist.  (*Id*., PageID.19).  Harp asserts that this "delay in necessary medical treatment for a non-medical reason [was] 'deliberate indifference.' "  (*Id*.).  He further asserts that he requires "necessary [a]ccommodations/[d]aily [a]ssistive living devices related to [his] vision problems[,]" specifically a lighted magnifier and a monoscope, which defendants have thus far refused to provide."  (*Id*.).

As a result of the deficient healthcare Harp received, Harp's "multiple medical need/issues have become 'chronic' in nature, and . . . multiplied."  (*Id*., PageID.8).  Harp is "almost completely blind at this point, and at risk of losing what little vision [he has] left[.]"  (*Id*.).

B.    Medical Records

Austin attached a portion of Harp's medical records from the MDOC to her motion for summary judgment.  The records relevant to her motion are summarized below.

On January 23, 2021, Harp requested replacement of his visual aid because

he was "legally blind" and unable to "even read [his] own writings[.]"  (Medical

Records, ECF No. 31-1, PageID.217).  Records reflect that Harp was informed he

need make his request "through the ADA Coordinator."  (*Id*.).  Then, on February

14, 2021, Harp requested to be seen by a doctor for his chronic conditions,

including his "visual problem[.]"  (*Id*., PageID.218).  In response, Harp was told

that he would "be seen by a provider based on [his] risk assessment."  (*Id*.).  He

was also advised to remain patient.  (*Id*.).  On February 18, 2021, Austin reviewed

Harp's medical records.  (*Id*., PageID.219).  It does not appear she took any action

following the review of Harp's medical records.

On March 15, 2021, Harp requested "Boston multipurpose lens cleaner for

[his] contact lens and saline solution[.]"  (*Id*., PageID.221).  Harp said that he had

sent kites requesting these items before and that he "need[ed] them right now."

(*Id*.).  In response, Harp was told he did "not have an active order for these items

and they [were] not on [his] detail."  (*Id*.).  He was also informed that "[a] chart

review ha[d] been entered for [his medical provider] to see if [he could] get these

items."  (*Id*.).

On March 18, 2021, Harp was examined, and records reflect that there was

redness on his right eye under his contact lens.  (*Id*., PageID.222).  The records

also reflect that Harp told Austin that he was experiencing "blurred vision."  (*Id*.,

PageID.223).  He explained that he did not have any contact solution and that "his

6

contact ha[d] been in for several weeks." (*Id.*).  Austin's examination notes state

that Harp's right eye had "good eye movements," but that the "iris appear[ed]

cloudy" and there was "redness with swelling around [his] contact." (*Id.*).  She

assessed that Harp had "[c]onjunctival edema, right eye" that was "Current,

Temporary/Acute, Initial." (*Id.*).  She classified her consultation request for him to

be seen by an ophthalmologist as urgent.  (*Id.*, PageID.224).

On March 19, 2021, Harp was transported to the emergency department at

Henry Ford.  (*Id.*, PageID.239).  On examination, it was noted that Harp presented

with "significantly diminished vision in his right eye." (*Id.*).  It was further noted

that his right eye had "[s]ignificant corneal ulceration and corneal opacity and

edema." (*Id.*).  Harp's eye was treated with topical antibiotics, and it was

recommended that he be transferred to U of M "for urgent ophthalmological

evaluation." (*Id.*).  A handwritten note on the Henry Ford records states that Harp

was transported to U of M, but "refused to wait to be seen and left." (*Id.*

(capitalization modified)).

### III.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  A fact is material if it might affect the outcome of the case under governing

law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' "  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Harp is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law."  *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable."  *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d

784, 788 (6th Cir. 2005)) (cleaned up).

### IV.   Motion for Summary Judgment

#### A.   Corizon's Motion

On March 8, 2023, Corizon and Austin filed a joint motion for Chapman Law Group to withdraw as counsel and for a 120-day stay.  (ECF No. 32).  Defendants explained that Corizon had filed a voluntary bankruptcy petition in the United States Bankruptcy Court for the Southern District of Texas (Case No. 23-90086 (CML)).  (*Id.*).  Under 11 U.S.C. §362, the filing operates as an automatic stay as to the claims against Corizon.  Accordingly, on March 15, 2023, the Court administratively stayed all proceedings as to Corizon during the pendency of its bankruptcy proceedings.  (ECF No. 34).  These proceedings are still ongoing.  In light of the stay, the undersigned recommends that Corizon's motion be denied without prejudice.  The motion can be renewed after the bankruptcy stay is lifted and proceedings resume.

#### B.   Austin's Motion

Austin makes three main arguments in her motion for summary judgment. First, she argues that Harp's deliberate indifference claim fails as a matter of law. Second, she argues that Harp's ADA claim fails as a matter of law.  Third, she argues that Harp failed to properly exhaust his administrative remedies against her as required under the Prison Litigation Reform Act (PLRA).  Each argument will

be addressed in turn below.

### 1.    Eighth Amendment

#### a.    Deliberate Indifference Standard

Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104.  An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002).

Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.' " *Comstock*, 273 F.3d at 702-703 (citing *Farmer*, 511 U.S. at 834).  In *Farmer*, the Supreme Court held that the objective test requires that "the inmate show that he is incarcerated under conditions posing a substantial risk of serious harm."  511 U.S. at 834; *see also Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004).  Under "the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703 (citing *Farmer*, 511 U.S. at 834).

b.    Application

i.    Objective Component

Austin asserts that "it is not entirely clear what objective medical condition [Harp] is placing at issue." (ECF No. 31, PageID.203). She explains that Harp first raised an issue with his right eye in a March 15, 2021 kite and then again during a conversation with her on March 18, 2021. (*Id*.). Following that conversation, Austin placed an order for multipurpose cleaner and saline solution as well as "submitt[ing] a consultation request for him to be seen at [U of M]." (*Id*.). However, Harp's medical records from the MDOC demonstrate that Harp began requesting medical attention for his right eye in January 2021, and that Austin became aware of Harp's request for medical attention by February 18, 2021, the date on which she reviewed his chart.

Harp requested to be seen by a doctor on February 14, 2021, but was not seen until Austin examined him on March 18, 2021. By that point, even though Harp's right eye had "good eye movements," the "iris appear[ed] cloudy" and there was "redness with swelling around [his] contact." (ECF No. 31-1, PageID.223). Austin herself assessed that Harp had "[c]onjunctival edema, right eye" that was "Current, Temporary/Acute, Initial." (*Id*.). The following day, emergency department providers at Henry Ford noted that Harp presented with "significantly diminished vision in his right eye." (*Id*., PageID.239). And also that his right eye

11

had "[s]ignificant corneal ulceration and corneal opacity and edema." (*Id*.).  Henry

Ford providers applied topical antibiotics to Harp's right eye and recommended

that he be transferred to U of M "for urgent ophthalmological evaluation." (*Id*.).

Austin does not explain why Harp was not evaluated between her February

18, 2021 chart review and her March 18, 2021 evaluation.  By March 18, 2021, the

appearance of Harp's right eye was so concerning that Austin arranged for him to

be taken to Henry Ford the following day.  Medical providers in the emergency

department at Henry Ford noted multiple problems with the appearance of Harp's

right eye and his loss of vision.  They also applied topical antibiotics to his right

eye.

Viewed in the light most favorable to Harp, the evidence (medical records

and Harp's statements in his verified complaint) shows that he received delayed

treatment.  "A typical medical-needs claim deals with a deprivation of medical

care. . . ." *Villegas v. Metropolitan Gov't of Nashville*, 709 F.3d 563, 569 (6th Cir.

2013).  The Sixth Circuit "has stated that the objective component of deliberate

indifference in a medical-needs case is met where a plaintiff produces evidence of

a 'serious medical need.' " *Id*. at 570 (quoting *Blackmore v. Kalamazoo Cnty.*, 390

F.3d 890, 896 (6th Cir. 2004)).  The Sixth Circuit "further defined a serious

medical need as either one that has been diagnosed by a physician as mandating

treatment or one that is so obvious that even a lay person would easily recognize

the necessity for a doctor's attention." *Villegas*, 709 F.3d at 570.

In *Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001), the Sixth Circuit held that "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *See also Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 551 (6th Cir. 2009) ("While there was nothing inappropriate about Fletcher's initial treatment instructions, Fletcher's care demonstrates deliberate indifference when she informed Dominguez that despite his serious symptoms she would not see him until her regularly scheduled medication run at around 7:00 p.m."); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 845 (6th Cir. 2002) ("[A]lthough she knew about the decedent's serious medical condition, Dr. Lee chose to wait [almost an hour] for Dr. Said instead of immediately contacting another physician or the emergency team. Dr. Lee's delayed action also cost the decedent invaluable time, during which he could have received medical care which may have saved his life."). Further, "[p]roof of this element need not be unduly rigorous: a plaintiff can satisfy h[is] burden by showing that the medical condition is so obvious that a lay person would recognize the need for prompt treatment, or, for more subtle conditions, by submitting verifying medical evidence of the condition." *Forton v. Cnty. of Ogemaw*, 435 F. Supp. 2d 640, 650 (E.D. Mich. 2006). Additionally, the

13

Sixth Circuit has "not always required the plaintiff's medical proof to be expert medical testimony." *Jackson v. Gibson*, 779 F. App'x 343, 346 (6th Cir. 2019) (internal quotation marks and citations omitted).

Here, records from Austin's March 18, 2021 examination of Harp and records from Harp's emergency department visit the following day demonstrate that Harp had a serious medical need. For example, the Henry Ford records indicate that Harp had "significantly diminished vision in his right eye," (ECF No. 31-1, PageID.239), and "loss of vision is an objectively serious medical need." *Bass v. Taylor*, No. 18-1237, 2019 WL 2476754, at *5 (W.D. Tenn. June 12, 2019).

Furthermore, the undersigned disagrees with Austin's argument that Harp has failed to satisfy the objective component because of the Sixth Circuit's holding in *Phillips v. Tangilag*, 14 F. 4th 524 (6th Cir. 2021). In *Phillips*, "the Sixth Circuit determined that the plaintiff inmate could not 'rely on his serious medical needs alone to establish the objective element of his deliberate-indifference claim' where the evidence showed that he 'received extensive care.' " *Ashley v. Boayue*, No. CV 19-10484, 2021 WL 5911212, at *7 (E.D. Mich. Nov. 22, 2021), *report and recommendation adopted*, 2021 WL 5907927 (E.D. Mich. Dec. 14, 2021) (quoting *Phillips*, 14 F. 4th at 536). "The Sixth Circuit held that because the plaintiff's claim 'challenges the adequacy of this undisputed care, he must

14

show that the doctors provided grossly incompetent treatment.' "  *Ashley*, at *7

(quoting *Phillips*, 14 F.4th at 536).  This case is unlike *Philips* because it involves

the *delay* of medical care rather than simply a challenge to the *adequacy* of

medical care.  This case, however, is analogous to a Sixth Circuit case decided a

month before *Phillips*.

In that case, *Burwell v. Lansing*, the Sixth Circuit stated that "in cases where

the medical need is so obvious that even a layperson would easily recognize the

necessity for a doctor's attention, the plaintiff need not present verifying medical

evidence to show that, *even after receiving the delayed necessary treatment*, his

medical condition worsened or deteriorated."  7 F.4th 456, 463 (6th Cir. 2021)

(cleaned up and emphasis added).  "Instead, it is sufficient to show that he actually

experienced the need for medical treatment, and that the need was not addressed

within a reasonable time frame."  *Id*. (internal quotation marks and citation

omitted).  Harp has satisfied this requirement.

Furthermore, Harp's delay in being treated is not "a mere disagreement

with medical judgment [that would be] insufficient to establish deliberate

indifference."  *Vartinelli v. Cady*, No. 07-12388, 2009 WL 3180724, at *9 (E.D.

Mich. Sept. 25, 2009) (citing *Estelle*, 429 U.S. at 105-107).  Instead, the

undersigned finds the uncontroverted evidence that Austin determined Harp

needed specialized medical attention and the Henry Ford providers deciding the

15

same constitutes evidence that a jury could consider in evaluating his deliberate indifference claim.  Though Harp does not provide medical expert testimony that his treatment was "grossly incompetent," *Phillips*, 14 F. 4th at 536, he has shown an obvious medical need that satisfies the objective prong of the deliberate indifference test without such evidence, *Burwell*, 7 F.4th at 463; *Blackmore*, 390 F.3d at 899-900.

The Sixth Circuit does not strictly require expert testimony to satisfy the objective prong, even if it "typically" (*Phillips*, 14 F. 4th at 535), "often" (*Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018)), or "may" (*Id.* (quoting *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017))) be required.  Here, the effect of Harp's delay in treatment is apparent through the medical records and his verified complaint.  Thus, Harp has demonstrated that there is a genuine issue of material fact as to the objective component of his deliberate indifference claim.

ii.    Subjective Component

Turning now to the subjective component:  While Harp "bears the burden of proving subjective knowledge . . . he may do so with ordinary methods of proof, including by using circumstantial evidence." *Rouster v. Cnty. of Saginaw*, 749 F. 3d 437, 447 (6th Cir. 2014).  "Indeed, a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

(internal quotation marks and citation omitted).  Moreover, "a prisoner is not required to show that he was literally ignored by the staff to prove an Eighth Amendment violation, only that his serious medical needs were consciously disregarded." *Id*. (cleaned up).  Further, when determining whether a delay in providing medical care satisfies the subjective component, the Sixth Circuit has said that "[e]ven relatively short periods of delay or neglect have sufficed." *Darrah v. Krisher*, 865 F.3d 361, 368 (6th Cir. 2017) (collecting cases).

Even though it is not required, Harp has adduced evidence suggesting that his medical needs were "literally ignored" by Austin.  *Id*. (internal quotation marks and citations omitted).  Austin was aware Harp had requested to be seen by a doctor.  She even reviewed his chart after becoming aware of his request.  His chart included records showing that he had multiple health conditions related to his eyes.  Despite this, Austin did not do anything until Harp spoke to her a month later.  Accordingly, Harp has demonstrated that there is a genuine issue of material fact as to the subjective component of his deliberate indifference claim.  *See id*. ("Viewing the facts in the light most favorable to Darrah, as we are required to do in a motion for summary judgment, we believe that Darrah has sufficiently shown that genuine disputes of material fact exist as to whether Dr. Weil was deliberately indifferent for failing to provide any HPK treatment during this three-month period."); *see also Murray v. Dep't of Correcs.*, 29 F.4th 779, 789 (6th Cir. 2022)

17

("A jury could find that Dr. Heyd moved at a lackadaisical pace in ascertaining Murray's INR level and adjusting his Coumadin dosage, considering the seriousness of Murrays condition." (internal quotation marks and citation omitted)). Therefore, Austin's motion for summary judgment on Harp's deliberate indifference claim should be denied.

      2.      Americans with Disabilities Act and Rehabilitation Act

Harp also asserts claims against Austin under the ADA and Rehabilitation Act. However, a plaintiff "may not maintain an action under the ADA against individual defendants in their individual capacities." *Sebestyen v. Gardner*, 2:17-cv-550, 2021 WL 1909696, at *3 (S.D. Ohio May 12, 2021), *report and recommendation adopted*, 2021 WL 2562240 (S.D. Ohio June 23, 2021). The same is true under the Rehabilitation Act. *See, e.g.*, *Middlebrooks v. Helton*, No. 3:23-cv-00054, 2023 WL 4002470, at *10 (M.D. Tenn. June 14, 2023). This is because "the ADA does not provide for personal liability for defendants sued in their individual capacities." *Williams v. McLemore*, 247 F. App'x 1, 8 (6th Cir. 2007). Instead, "Title II of the ADA authorizes suits by private citizens for money damages against public entities that violate Section 12132." *Middlebrooks*, at *10. Similarly, the Rehabilitation Act "does not impose liability upon individuals." *Bevington v. Ohio Univ.*, 93 F. App'x 748, 750 (6th Cir. 2004).

Here, Harp has sued Austin as an individual. However, neither the ADA or

Rehabilitation Act permit such claims.  Accordingly, Austin's motion for summary judgment should be granted as to Harp's claims under the Rehabilitation Act and the ADA.

### 3.      Exhaustion Under the PLRA

#### a.      Legal Standard

The PLRA requires prisoners to "properly" exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006).  Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (emphasis in original) (internal quotation marks and citations omitted).  Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record.  *Jones v. Bock*, 549 U.S. 199, 204 (2007).  The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Id*. at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."  *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).  But a prisoner

countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015).  Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice.  *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The MDOC has established a three-step process to review and resolve prisoner grievances.  "Under the [Michigan] Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010).  As noted by the Court in *Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ] prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94.  To be sufficient, a grievance need not "allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated with respect to other principles by Jones v. Bock*, 549 U.S. 199 (2007).  Nonetheless, the grievance must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's

20

complaint." *Id.*

Under MDOC Policy Directive 03.02.130, prisoners must provide the following information at Step I of the grievance process: "The issues should be stated briefly but concisely.  Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places, and names of all those involved in the issue being grieved are to be included."  MDOC PD 03.02.130 ¶ S (underlining omitted).  "The grievance process is exhausted once the final response is issued in Step III."  *Parker v. Turner*, No. 20-12794, 2022 WL 1787037, at *2 (E.D. Mich. June 1, 2022).  "[A] grievance denial on the merits constitutes exhaustion of the remedies available, whereas a properly rejected grievance does not exhaust the claims therein."  *Lewis v. Greason*, No. 2:21-CV-11939, 2023 WL 2949998, at *4 (E.D. Mich. Feb. 15, 2023), *report and recommendation adopted*, 2023 WL 2572455 (E.D. Mich. Mar. 20, 2023).

b.    Application

Here, Austin admits that Harp filed a Step I grievance on March 18, 2021, listing an incident date of March 15, 2021.  This grievance "alleges he was not receiving proper medical attention because he was not receiving contact solution nor being seen by medical."  (ECF No. 31, PageID.213).  "This grievance was addressed and denied on the merits at all there [sic] steps."  (*Id.*).  Austin

"concede[s] this grievance exhausts [Harp's] claims alleging N.P. Austin denied him contact solution[.]" (*Id*.). However, she goes on to say that the "grievance only exhausts [Harp's] claim that in March 2021 N.P. Austin denied him contact lens solution." (*Id*.). This statement goes too far.

Harp wrote in his grievance that he had "repeatedly tried/attempted to acquire the medically necessary treatment and supplies" for his right eye and that "[t]he people involved in the grievance" including Austin had denied him both treatment and supplies. (Grievance Records, ECF No. 31-3, PageID.308). Accordingly, the contents of Harp's grievance, along with Austin's concession, show that Harp properly exhausted his remedies against Austin for his claims that she delayed and/or denied providing him with necessary medical treatment and supplies. His grievance exhausts his claims that Austin failed to evaluate him in a timely manner, not just the portion of those claims related to contact lens solution. In other words, Harp gave Austin fair notice of the nature and extent of his claims. Thus, summary judgment on the basis of exhaustion is not warranted.

## V.    Conclusion

For the reasons stated above, the undersigned RECOMMENDS that the joint motion for summary judgment, (ECF No. 31), be GRANTED IN PART and DENIED IN PART as to Austin and DENIED WITHOUT PREJUDICE as to Corizon. If this recommendation is adopted, the case will continue against Corizon

due to the stay and against Austin on Harp's § 1983 claim alleging deliberate

indifference in violation of the Eighth Amendment.

Dated: July 19, 2023                     s/Kimberly G. Altman
Detroit, Michigan                        KIMBERLY G. ALTMAN
                                         United States Magistrate Judge

## <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the court determines that any objections are without

merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon
counsel of record and any unrepresented parties via the Court's ECF System to
their respective email or First Class U.S. mail addresses disclosed on the Notice of
Electronic Filing on July 19, 2023.

<u>s/D. Tofil for      </u>
CAROLYN CIESLA
Case Manager

24